# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98C5323 | **DATE** | 1/5/01 |
| **CASE TITLE** | Raddatz v. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. For the reasons stated on the attached order, plaintiff's first motion in limine (51-1) is denied, and plaintiff's second motion in limine (64-1) and third motion in limine are granted in part and denied in part. Defendant's motion in limine (56-1) is granted in part and denied in part. Defendant's first motion to amend the pretrial order (63-1) is granted. Plaintiff's objection to defendant's exhibit 3 is overruled. Plaintiff's motion for judicial notice of plaintiff's disability (38-2) is denied.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | JAN - 8 2001 date docketed | 75 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| OR6 | courtroom deputy's initials | | 01 JAN -5 PM 3:57 | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | | |
|---|---|---|
| THOMAS RADDATZ, | ) | **DOCKETED** |
| | ) | JAN - 8 2001 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 98 C 5323 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Thomas Raddatz was a firefighter employed by the Chicago Fire Department. He claims he was terminated because of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12112(a). The City claims it terminated Raddatz because he had been convicted of a felony. In July 1995, Raddatz was convicted of aggravated possession of a stolen motor vehicle in violation of Ill. Rev. Stat. ch. 95.5, §4-103.2(a)(5) (currently 625 ILCS 5/4-103.2(a)(5)). The offense consisted of Raddatz's knowing possession of a stolen Bobcat – a small earth-mover.

The case is set for trial; the purpose of this Memorandum Opinion is to rule on the parties' motions *in limine*.

### A. Plaintiff's motions *in limine*

#### 1. Motion *in limine* filed on December 11, 2000

a. The Court denies Raddatz's request to bar the City from referring to him at trial as a "convicted felon." The reference is neither untrue nor unfairly prejudicial. The Court likewise

denies Raddatz's request to preclude the City from referring to the felony for which he was convicted by the title "aggravated possession of a stolen motor vehicle." This description of the offense was part of what the City's decision makers had before them when they made their decision to terminate Raddatz. To preclude reference to the title of the offense would keep from the jury a potentially significant fact that the City says it took into account in making its decision.

b.  Raddatz also seeks a jury instruction that his conviction may not be considered by the jury as impeaching his credibility.

Convictions involving theft-type offenses do not, without more, qualify for automatic admissibility under Rule 609(a)(2); rather, there must be a showing that the underlying conduct actually involved dishonesty or false statement. *See, e.g., United States v. Foster*, 227 F.3d 1096, 1100 (9th Cir. 2000) (conviction for receipt of stolen property); *United States v. Galati*, 230 F.3d 254, 260 (7th Cir. 2000) (conviction for petty shoplifting); *United States v. Wiman*, 77 F.3d 981, 986 (7th Cir. 1995) (theft conviction). The Advisory Committee Notes to Rule 609(a)(2) indicate that in using the term "dishonesty and false statement," drafters of the Rule meant to include "crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of *crimen falsi*, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the [witness'] propensity to testify truthfully." Based on what we have thus far been told about Raddatz's conviction, it did not involve any element of "deceit, untruthfulness, or falsification," but rather concerned his purchase of a piece of equipment knowing that it had been stolen.

But even if it is not automatically admissible under Rule 609(a)(2), Raddatz's felony conviction still may be admitted for impeachment purposes unless its probative value is

2

outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 609(a)(1) & 403. In this case the balance tips in favor of admissibility. *See United States v. Hourihan,* 66 F.3d 458, 464 (2d Cir. 1995) (upholding admission under Rule 609(a)(1) of conviction for possession of stolen property). Raddatz's conviction will already be in evidence because the City claims that the conviction was the reason it terminated Raddatz's employment. Certain of the details of the conviction, including Raddatz's own version of the events, will already be in evidence as well, as these were part of the information the City considered. Under the circumstances, telling the jury that it may also consider the conviction with regard to Raddatz's credibility is unlikely to cause him any additional prejudice at all, and certainly not any *unfair* prejudice (which is what Rule 403 takes into account).

For these reasons, the Court declines Raddatz's request to instruct the jury that it may not consider his conviction as bearing on his credibility.

**2. Motion *in limine* filed on November 2, 2000**

a. The City intends to rebut Raddatz's claim of discrimination by showing that it also terminated non-disabled firefighters who were convicted of felonies. Raddatz wants to preclude the City from introducing in evidence any such instances that involved taking property as opposed to possessing stolen property, dishonesty, or narcotics. The Court declines this request. The City is entitled to explain how the Fire Department deals with employees convicted of felonies and how it distinguishes among different types of felonies in making employment decisions; it can do so only by introducing other cases involving various types of felonies.

b. Raddatz seeks to bar the City from introducing at trial "[t]hat there have been collateral source payments to the Plaintiff or the amount of those payments from the Firemen's

3

Annuity and Benefit Fund of Chicago." Nov. 2, 2000 Motion *in Limine*, p. 1. The Firemen's Annuity and Benefit Fund is established by Illinois statute and provides for, among other things, payment of "duty disability benefits" to firefighters who become disabled because of injuries suffered while on duty. *See* 40 ILCS 5/6-151. After he had been on disability leave for approximately one year, Raddatz made an application for duty disability benefits. The trustees of the Fund denied his claim, but the Illinois Appellate Court held that Raddatz was entitled to receive the benefits.

Raddatz's request to exclude his receipt of duty disability benefits is somewhat at cross purposes with his argument that to support his claim of discrimination, he should be able to offer evidence concerning the litigation of his claim for benefits. *See infra* at 10-12. There is also some tension between Raddatz's motion *in limine* and his contention that it was only after he went on disability leave that the Department targeted him for termination. But Raddatz does have a point. The question whether benefits from a collateral source should be deducted from a back pay award in a discrimination case is for the Court to decide, not the jury. *See Flowers v. Komatsu Mining Systems, Inc.*, 165 F.3d 554, 558 (7th Cir. 1999). Thus the possibility that the Court might require a setoff does not warrant presenting the fact or amount of disability payments to the jury.

The City argues, however, that evidence that Raddatz received benefits constituting a significant percentage of his regular pay should be admitted to rebut his claim of emotional distress. It contends that his receipt of disability benefits cushioned any claimed emotional impact that might have come from being the object of discrimination. But even if this may be so in the abstract, in this case Raddatz's receipt of duty disability benefits would not appear to have

4

any relationship to his claim of emotional distress, for it was not until mid-December 1998 – fourteen months after Raddatz learned of his termination – that the Appellate Court ruled he was entitled to those benefits. Moreover, the fact that Raddatz was receiving a significant part of his salary during his one-year disability leave (through approximately October 1997) has no impact whatsoever on his claim of emotional distress, for it is undisputed that during that period Raddatz was unaware he had been terminated.[1] In short, Raddatz's receipt of disability pay has only minimal probative value. This is far outweighed by the interest in avoiding the waste of time that would result if the jury were required to hear about the ins and outs of disability pay, as well as the possibility of jury confusion (the jury would have to be told that all the evidence it heard about disability benefits could not impact a back pay award but could impact emotional distress damages).

For these reasons, the Court grants Raddatz's motion to exclude evidence regarding the amounts of disability pay that he received. The Court declines, however, Raddatz's request for a pretrial ruling that his duty disability benefits will not be used to offset an award of back pay. There is no question that the benefits are a "collateral" source, *see Hamlin v. Charter Township of Flint,* 165 F.3d 426, 434 (6th Cir. 1999) (concerning firefighters' benefits almost identical to Illinois duty disability benefits); *EEOC v. O'Grady,* 857 F.2d 383, 390 (7th Cir. 1988) (police officers' pension benefits provided pursuant to state statute); *City of Chicago v. Human Rights Commission,* 264 Ill. App. 3d 982, 637 N.E.2d 589 (1994) (concerning firefighters' duty

---

[1] The City says that the Department approved Raddatz's termination in April 1996 but did not advise him until October 1997 because of a policy against terminating a firefighter while he is on disability leave.

5

disability benefits). But in this Circuit, a district court has the discretion to offset collateral source payments against an award of back pay. *Flowers*, 165 F.3d at 558. The Court believes it more appropriate in the particular circumstances of this case to make this determination, if necessary, after completion of the trial.

3.  Raddatz's request to preclude the City from attempting to draw a negative inference from the amount of his *ad damnum* is granted without objection.

4.  Raddatz seeks to preclude the City from offering evidence regarding his wealth, real estate holdings, and income from those holdings. The City argues that after his termination, Raddatz was able to earn more income from his real estate holdings (a few small apartment buildings) than he would have if he had remained with the Fire Department. It also contends that because he was able to devote more time to the apartment buildings, those properties appreciated in value. Both amounts, the City argues, should be offset against any back pay award.

In ADA cases, the remedial provisions of Title VII apply. 42 U.S.C. §12117(a). Under Title VII, "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. 2000e-5(g). The City has offered no authority, and we are aware of none, for the proposition that an appreciation in the value of one's assets constitutes "earnings" that can be used to reduce a back pay award. The Court believes that the statute's use of the term "earnings" is the rough equivalent of "earned income," which as commonly used does not include appreciation in the value of an asset. Even if Raddatz's buildings appreciated in value, that by itself did not put any money into his pocket to take the place of his firefighter's salary. Moreover, it likely would be virtually impossible in this case to sort out the relative impact on

any alleged appreciation of Raddatz's ability to spend more time on the buildings, as opposed to other factors. The City has offered no expert or other witness who could perform such an analysis, thus leaving the matter entirely to guesswork. For these reasons, evidence regarding the buildings' value and appreciation is excluded.

By contrast, amounts that an ADA or Title VII plaintiff earns in other employment, even self-employment, may be used to offset back pay. We see no reason why any increased income that Raddatz was able to earn from his apartment buildings because he was no longer working for the Fire Department should be exempt from this rule. As there appears to have been no prohibition against Raddatz earning money from real estate holdings while working for the Department, the question whether any increased earnings may be used to reduce back pay should be analyzed in the same way that "moonlighting" income is addressed in similar situations. "[E]arnings derived from moonlighting should not be subtracted from a plaintiff's back pay award if the plaintiff could hold the supplemental job and the desired full time job simultaneously and there was reason to believe it would be done." *DeFries v. Haarhues*, 488 F. Supp. 1037, 1043 (C.D. Ill. 1980) (citing *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973)). *Accord, Lilly v. City of Beckley*, 797 F.2d 191, 196 (4th Cir. 1986); *United States v. New Jersey*, 530 F. Supp. 328, 336 (D.N.J. 1981). At trial, the City will bear the burden of proving that Raddatz could not have earned the additional income if he had remained with the Department. *See Gaworski v. ITT Commercial Finance Corp.*, 17 F.3d 1104, 1111 (8th Cir. 1994). *See generally Chesser v. State of Illinois*, 895 F.2d 330, 338 (7th Cir. 1990). But so long as the City in good faith has evidence that after his termination, Raddatz received greater income from the buildings than he did before his termination, the Court will not preclude it from

7

pursuing the issue at trial. It remains to be seen whether there will be sufficient evidence to warrant a jury instruction on the issue of offset.

### 3. Motion filed December 26, 2000

a. The Court denies Raddatz's request to preclude the City from referring to the claimed actual value of the stolen equipment involved in Raddatz's criminal case. The amount in question – $25,000 – was part of the information that the City's decision makers had before them when they decided to terminate Raddatz. Though the Court sees no basis to allow the City to introduce evidence to independently prove the equipment's actual value, it is entitled to introduce the information that the Fire Department took into account in terminating Raddatz. This will not cause Raddatz any unfair prejudice.

b. The Court bars the City from offering evidence that the labor union representing firefighters declined to pursue the grievance that Raddatz filed in October 1997 to protest his termination. The union's actions and reasons for its action have no probative value with regard to the merit of Raddatz's claims, and the admission of such evidence would be unfairly prejudicial to Raddatz.

c. It appears to the Court that Raddatz's request to bar the City from referring to the Board of the Firemen's Annuity and Benefit Fund as a "state agency" is rendered moot by the Court's ruling regarding the admissibility of evidence relating to Raddatz's claim for duty disability benefits. *See infra* at 10-12. If this is not the case, the parties should advise the Court, and we will address the matter at trial.

d. For the reasons discussed in Section A.2.a of this Memorandum Opinion, the Court declines Raddatz's request to preclude the City from introducing evidence regarding the

Fire Department's treatment of other convicted felons.

### 4. Plaintiff's objection to defendant's exhibit 3

The Court overrules Raddatz's objection to defendant's exhibit 3, a video tape showing Raddatz performing work on one of his buildings. The Department caused the video tape to be made in connection with Raddatz's claim for duty disability benefits. The Court has reviewed the video tape and believes that it may have some probative value on the question whether Raddatz is "disabled" within the meaning of the ADA.

### B. Defendant's motions *in limine*

#### 1. Defendant's first set of motions *in limine*

a. The City's request that the Court preclude Raddatz from referring to the Firemen's Annuity and Benefit Fund or its Board of Trustees as if they were one and the same as the City of Chicago – the flip side of Raddatz's request discussed in Section A.3.c – is rendered moot by virtue of the Court's ruling (*see infra* at 10-12) that Raddatz may not present evidence regarding the legal proceedings concerning his duty disability claim.

b. The Court agrees with the City that the Illinois Appellate Court's conclusion that Raddatz was disabled within the meaning of the duty disability statute should not be admitted in evidence. The court's finding came fourteen months after Raddatz was terminated, and thus it could not have had any bearing on the state of mind of any of the decision makers whose actions Raddatz challenges in this case. In addition, the standard for "disability" under the ADA is more difficult to meet than the standard for disability under the state statute. *Compare* 42 U.S.C. §12102(2)(A)-(C) (to be "disabled" means to have an impairment that substantially limits a major life activity, or to have a record of such an impairment, or to be regarded as having such an

9

impairment) *with* 40 ILCS 5/6-112 (defining "disability" as having an incapacity "to perform any assigned duty or duties in the fire service"). Under the circumstances, even if the state court's finding were somehow relevant, the unfair prejudice to the City that its admission would cause (by risking jury confusion on whether the state court had determined one of the selfsame issues the jury must decide) far outweighs its minimal probative value.

2. **Motion *in limine* regarding defendant's motion to strike and dismiss**

a. Defendant's motion *in limine* regarding its motion to strike and dismiss plaintiff's amended complaint was rendered partially moot by the Court's ruling on that motion. The Court ruled that Raddatz could not maintain an ADA claim for denial of duty disability benefits, because he failed to include such a claim in his administrative charge filed with the EEOC. *See* Order of Dec. 13, 2000.

Still disputed, however, is whether and the extent to which Raddatz may introduce evidence regarding his claim for duty disability benefits, the manner in which that claim was handled, and the disposition of the claim. Most prominent among the matters that Raddatz wants to offer is evidence that then Deputy Fire Commissioner James Joyce, who was also a Trustee of the Firemen's Annuity and Benefit Fund, attempted to torpedo Raddatz's claim by bringing to the other Trustees' attention the fact that Raddatz had been convicted of a felony.

Raddatz has had some difficulty articulating a theory of how Joyce's actions or the history of his duty disability claim are relevant here. The Court has no quarrel with the proposition that disability-based discrimination in providing fringe benefits may, in an appropriate case, violate the ADA. *See* 42 U.S.C. §12112(a) & (b)(2); *Piquard v. City of East Peoria*, 887 F. Supp. 1106, 1124 (C.D. Ill. 1995). But that is not the issue in this case; the Court

10

has held that Raddatz cannot maintain such a claim. *See* Order of Dec. 13, 2000. Moreover, Raddatz's entitlement to duty disability benefits is not at issue in this case; he won that claim in state court. The Court does not intend to relitigate the duty disability claim during the trial of this case.

Raddatz seems to contend that evidence regarding Joyce's actions is relevant because it shows Joyce was out to get him and thus may assist Raddatz in proving discriminatory animus. But Raddatz has offered no evidence showing or even suggesting that Joyce was involved in the decision to terminate him. The documentary evidence indicates that Raddatz's termination was recommended and approved in April 1996 by Fire Department officials other than Joyce. Raddatz has offered no testimony that contradicts the documentary evidence. Rather, he argues that because one or more of the persons who approved and/or implemented the termination was Joyce's subordinate, Joyce must have known of their actions. But that does not mean Joyce was actually involved in the decision. And even if this were a viable theory, it would not justify admission of evidence regarding Joyce's actions in connection with Raddatz's duty disability claim. The fact that Joyce may have brought Raddatz's conviction to the Fund trustees' attention does not indicate that Joyce had an animus against people with disabilities: presumably all firefighters making duty disability claims have an injury of some sort, and thus Joyce's opposition to one such firefighter's claim does not indicate any animus against disabled people generally.

Raddatz also seems to argue that the Department's and Joyce's attempt to defeat his duty disability claim was part and parcel of his termination and should be admitted so the jury can see the entire picture. According to Raddatz, the Department began to take steps to terminate him

11

only after it became aware that he was disabled, out of a desire (at least in part) to avoid paying him benefits. But Raddatz does not need revisit the litigation of his duty disability claim to lay the evidentiary groundwork to present this theory to the jury. It ought to be sufficient for him to elicit, or attempt to elicit, evidence that the persons who decided to terminate him knew that he had suffered an injury, were aware that he was receiving disability pay, and realized that a duty disability claim was a possibility. The Court will not permit Raddatz to play back the history of his duty disability claim, for that history is not relevant to the issues in this case, and even if relevant its marginal probative value is far outweighed by the significant waste of time that would result if he were permitted to introduce such evidence.

For these reasons, the Court grants the City's motion *in limine* and bars Raddatz from presenting evidence regarding the proceedings before the Trustees of the Fund, the Circuit Court of Cook County, or the Appellate Court concerning his duty disability claim, and also from presenting evidence or questioning Joyce about bringing Raddatz's felony conviction to the Trustees' attention.

b. The Court denies the City's request to preclude Raddatz from contending that his medical condition substantially limited him in the major life activity of walking. Raddatz's complaint and his EEOC charge are both sufficiently broad to permit such a theory (neither pins him down to a specific theory of disability), and the City cites no discovery response in which Raddatz limited his claim in such a way as to preclude him from advancing this theory at trial.

c. Raddatz does not dispute that he cannot maintain a claim for punitive damages against the City. *See* 42 U.S.C. §1981a(b).

12

### 3. Motion *in limine* regarding CFD members' personal information

The Court denies the City's motion *in limine* regarding the use at trial of other Chicago Fire Department members' medical and disciplinary information. As discussed later in this Memorandum Opinion, the Court is limiting the types of allegedly comparable cases that may be offered in evidence to those involving Fire Department employees who had felony convictions. Because such convictions are already a matter of public record, the Court is not persuaded that there is a sufficient basis to warrant any restrictions on identification of the firefighters involved.

### 4. Motion *in limine* to bar evidence of plaintiff's May 1999 grievance

The Court agrees with the City that Raddatz's May 1999 grievance in which he sought compensation for accrued vacation days and benefits is irrelevant and inadmissible. After the Illinois Appellate Court ruled that Raddatz was entitled to duty disability benefits, he filed a grievance in which he sought the accrued vacation days and benefits for the period in which he had originally been denied duty disability benefits. The court's ruling and Raddatz's grievance came long after the employment decisions that he challenges in this case. Moreover, because Raddatz ended up receiving the benefits, they do not constitute part of his recoverable damages.

### 5. Motion *in limine* regarding claim for emotional distress damages

The Court declines the City's request to preclude Raddatz from seeking damages for emotional distress as part of his ADA claim. Raddatz seeks such damages in his complaint, and he testified at his deposition regarding the specifics of the emotional distress he claims to have suffered. The City claims that Raddatz relinquished any such claim in his deposition, but in fact his affirmative answer to an inartfully-worded question asking whether he was not claiming "any sort of mental [or] psychological damages *as a result of this lawsuit,*" Raddatz Dep. 262

13

(emphasis added), cannot fairly be construed as an admission that he suffered no such damages *as a result of defendant's conduct*. The City may use this and the other deposition passages cited in its motion to cross-examine Raddatz, but the Court will not preclude him from pursuing his damage claim.

6. **Motion *in limine* regarding plaintiff's felony conviction**

a. Raddatz disputes the City's contention that his felony conviction motivated his termination. To support his claim, he intends to introduce evidence that other firefighters convicted of felonies were not terminated. Raddatz may not, however, introduce evidence regarding firefighters who were arrested or charged but never convicted. Such persons are not similarly situated to him, and thus the evidence is irrelevant and inadmissible under Rule 402, and even if relevant would be subject to exclusion under Rule 403 because its slight probative value would be significantly outweighed by the risk of jury confusion and the needless waste of time that admission of the evidence would cause.

b. The Court also precludes Raddatz from offering evidence regarding how City departments other than the Fire Department dealt with employees who were convicted of felonies. The Fire Department officials who are claimed to have discriminated against Raddatz had no involvement in any other department's employment decisions, and Raddatz has no evidence that the Fire Department acted pursuant to an express or *de facto* City-wide policy, as opposed to a Fire Department-specific policy. The evidence is therefore irrelevant.

c. The Court denies the City's request to bar Raddatz from denying that he committed the conduct that forms the basis of his felony conviction. Raddatz pled guilty to the charge but evidently wants to be able to tell the jury that he did not knowingly possess stolen

14

property or at least give the jury his side of the story.

If the only issue was whether the Fire Department actually relied on the conviction (as opposed to Raddatz's alleged disability) in making its decision to terminate Raddatz, it would be a simple matter to preclude Raddatz's explanation, for the underlying details would not be relevant. But here the City argues, and the Court has held, that the conviction may also be used to impeach Raddatz's credibility. Under the circumstances, it seems fair to permit Raddatz to likewise give his version of the events at trial. Because the Court has ruled that Raddatz's written version of the events that he submitted to the Fire Department's internal affairs division is admissible (because it was part of the information that the Department had and considered in determining whether and how to sanction Raddatz), allowing Raddatz to testify briefly about the underlying circumstances will not introduce a new element into the trial.

This does not mean that the felony case will be retried (actually, tried for the first time, since Raddatz pled guilty before) in this ADA case. The Court intends to hold Raddatz to a *brief* explanation of his version of the events. It ought to be sufficient for the City on cross-examination to bring out that Raddatz was represented by counsel, was provided with discovery advising him of the evidence the prosecution had against him, was aware of the rights that he would give up by pleading guilty, knew that the charge was a felony and a serious one at that, and nonetheless chose to plead guilty. The Court is not inclined to permit the City to introduce independent evidence proving Raddatz's guilt. But if the City wishes to offer such evidence, it should bring the matter to the Court's attention at trial.

7. **Motion *in limine* regarding testimony of Norman Holland**

The Court precludes Raddatz's witness Norman Holland from testifying to anything

15

beyond laying the foundation necessary to explain plaintiff's exhibit 5. Exhibit 5 concerns the matter of David Kalish, a firefighter with a felony conviction who was not terminated and whose case Raddatz will present in an effort to show that he was terminated not because of his felony conviction but because of his disability. Holland participated in the arbitration of Kalish's grievance. Because Holland's name appears on documents that were produced by Raddatz in support of his claim, his use as a witness was reasonably foreseeable for this purpose. However, Raddatz's failure to describe the topics of Holland's expected testimony in response to an interrogatory seeking that information precludes Raddatz from calling him for anything other than this limited purpose.

## Conclusion

For the reasons stated above, plaintiff's first motion *in limine* [51-1] is denied, and plaintiff's second motion *in limine* [64-1] and third motion *in limine* are granted in part and denied in part. Defendant's motion *in limine* [56-1] is granted in part and denied in part. Defendant's first motion to amend the pretrial order [63-1] is granted. Plaintiff's objection to defendant's exhibit 3 is overruled. Plaintiff's motion for judicial notice of plaintiff's disability [38-2] is denied.

MATTHEW F. KENNELLY
United States District Judge

Date: January 5, 2001

16